**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

VICTOR MANUEL PEREZ PEREZ,                     :
                                                :
                                Plaintiff,       :
                                                :                    25-CV-3178 (RA) (OTW)
                                                :
            -against-                            :
                                                :              **<u>REPORT & RECOMMENDATION TO</u>**
NEW YORK STATE DEPARTMENT OF                     :              **<u>THE HONORABLE RONNIE ABRAMS</u>**
TRANSPORTATION, et al,                           :
                                                :
                                Defendants.      :
                                                :

-------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

Judge Abrams referred this matter to me on July 9, 2025, for general pretrial management, consideration of dispositive motions, and "consideration of *sua sponte* dismissal." (*See* ECF 20). For the reasons below, I respectfully recommend that Plaintiff's "Amended Complaints," filed at **ECF Nos. 17, 23, 24, 25, and 26 be DISMISSED with prejudice**, and that the Amended Complaint at **ECF 22 be DISMISSED with limited leave to amend**, as discussed below.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff commenced this action by filing a "petition for Writ of Mandamus" on April 12, 2025, against numerous defendants. (ECF 1). On May 2, 2025, he paid the filing fee, and the action was assigned to Judge Abrams. (*See* Docket). On May 5, 2025, Judge Abrams directed Plaintiff to file a complaint with an original signature, as required by Fed. R. Civ. P. 11(a). (ECF 5). On May 13, 2025, Plaintiff filed an "Amended Petition," ECF 6, and also a "Complaint for Writ of

1

Mandamus," ECF 7, both of which bear a signature.[1] On June 4, 2025, Plaintiff filed ECF 8, entitled "Motion to expedite order for relief for injunctive relief and declaratory judgment."[2]

To summarize, the "Amended Petition" seeks to compel defendants the United States Department of Justice, United States Department of Homeland Security, United States Customs and Immigration Services, Immigration and Customs Enforcement, New York City Criminal Court of Queens, Saddle River Municipal Court, "and other defendants" to adjudicate Plaintiff's I-130 petition with expediency. (ECF 6 at ¶ 12). Plaintiff asserts that he applied for an I-130 petition through his mother, a U.S. citizen, and that his petition has been held for over 180 days, causing undue delay and frustration. (*Id.* at ¶ 6).

The "Complaint for Writ of Mandamus" asserts that Plaintiff, "despite [approval from the DMV]," was "denied the continuation of the licensing process" for a commercial driver's license ("CDL") by the "[Department of Motor Vehicles] Driving Improvement Unit" without "any valid justification." (*See* ECF 7 at ¶¶ 6-7). Plaintiff purports to seek a "writ of mandamus compelling the [Department of Motor Vehicles] Driving Improvement Unit to permit him to continue the process for obtaining his [Class A CDL] (*See id.* at ¶ 9). Plaintiff argues that a writ of mandamus is "necessary to ensure that the [Department of Motor Vehicles] complies with its duty to process [his] application in accordance with the law." (*See id.* at ¶ 10).

As relevant here, on July 1, 2025, Judge Abrams issued the Order at ECF 15 (the "July 1 Order"), which explained to Plaintiff why, as a matter of law, many of the defendants named in ECF Nos. 6 and 7 should be dismissed. (ECF 15). The July 1 Order did <u>not</u> in fact dismiss any of

---

[1] The signatures on ECF 6 and ECF 7 do not resemble each other, but for the purposes of this R&R, these filings will be construed to be in compliance with Rule 11(a) and Judge Abrams's Order at ECF 5.
[2] ECF 8 also bears a signature which does not resemble the signatures on ECF Nos. 6 and 7.

the defendants, but gave Plaintiff an opportunity to file a letter explaining why the Court should

not. (*See* ECF 15). intended to dismiss all the State and Municipal Defendants as well as the

United States Department of Justice and the United States Department of Transportation from

the action[3]. (*See* ECF 15). In the alternative, Judge Abrams explained that Plaintiff could file an

amended complaint/petition that named the immigration-related defendants only, if Plaintiff

wished to proceed expeditiously. (*Id*.). Plaintiff did neither of these. (*See* Docket).

Less than an hour after the July 1 Order was docketed (and thus, likely before Plaintiff

received notice of it), Plaintiff filed a "Complaint for Declaratory and Injunctive Relief" which

raised largely the same claims as his prior two filings at ECF Nos. 6 and 7. (*See* ECF 17).[4]

Plaintiff also responded to the July 1 Order by filing a document that is also named

"CoCounsel Skill Results." (*See* ECF 16). Therein, Plaintiff argues, in conclusory fashion, that the

putative defendants have acted illegally in some fashion, and thus "it is imperative" that all

defendants remain, "to ensure a comprehensive examination of the alleged violations and to

uphold the principles of justice and due process." (*Id.* at 2.) Plaintiff's response does not address

the legal reasons Judge Abrams articulated for the proposed dismissals. (*See* ECF 15 at 1-2).

On July 7, 2025, Plaintiff filed five "Complaints" – each apparently attaching as an exhibit

the same Thomson Reuters printout of the summary and docket activity in this case. ("July

Complaints," at ECF Nos. 22-26). The top of each "Complaint" includes a link called "Perez Perez

v. New York State Department of Transportation et al (15).pdf" [sic] that points to

"cocounsel.thomsonreuters.com/file/view…" that is not available to view.

---

[3] *See* I(A) *infra*

[4] The title of this document appears to be "CoCounsel Skill Results." This document does not bear Plaintiff's original signature.

On July 17, 2025, Plaintiff filed a "Notice of Appeal and Opposition to Termination" ("Notice of Appeal") that followed the formatting of the July Complaints, including linking to a "cocounsel.thomsonreuters.com" document at the top. (*See* "Notice of Appeal," ECF 27). The Notice of Appeal, like the July Complaint at ECF 23, also includes points to "cocounsel.thomsonreuters.com" links (that are likewise not available to view) in several footnotes. The crux of Plaintiff's appeal appears to be that Judge Abrams dismissed all of the Defendants without providing Plaintiff an opportunity to be heard. (*See, generally* ECF 27).

On the same day, Plaintiff also filed a "Request for Emergency Order,", with similar formatting, in which he seeks an "emergency order to file evidence" and also an "expedited issuance of summons." (*See* ECF 28).  In light of the pending Notice of Appeal, it was unclear what authority, if any, I had to act. (*See* ECF 27). On October 9, 2025, the Second Circuit issued its mandate, dismissing the appeal effective September 2, 2025. (ECF 29).

A. <u>**The July 1, 2025 Order**</u>

Judge Abrams's Order noted that Plaintiff, in filing the action and petitions at ECF Nos. 6 and 7 sought "writs of mandamus compelling the adjudication of (1) his application for legal permanent resident status; and (2) his application for a commercial driver's license." (ECF 15 at 1). Judge Abrams identified seven "State and Municipal Defendants" against which Plaintiff only sought a writ of mandamus. *Id.* at 1 (citing *Disability Rts. New York v. City of New York*, No. 22-CV-04493 (ER), 2023 WL 6308574, at *6 (S.D.N.Y. Sept. 28, 2023) for proposition that federal courts may not issue writs of mandamus against state officials). The original petitions also "lacked allegations against the United States Department of Justice and the United States

Department of Transportation," and thus those Respondents were also subject to dismissal).

Finally, the Order provided two options to Plaintiff, both due by July 14, 2025:

First, Plaintiff could submit a letter explaining why the United States Department of Justice, the United States Department of Transportation and the State and Municipal Defendants should not be dismissed;
Second, Plaintiff could "file an Amended Petition that names only the United States Department of Homeland Security and United States Citizenship and Immigrations Services as respondents.

*Id.* at 2.  Plaintiff's subsequent filings did neither.

### B.  The "Amended Complaints"

On July 1 and on July 7, Plaintiff filed a total of six documents purporting to be "Complaints," none of which are signed, and all of which appear to be AI-generated summaries or reiterations[5] of the docket in this case. (*See* ECF Nos. 17, 22, 23, 24, 25, 26). The last four filings, ECF Nos. 22-26, were filed on the same day, and are the only documents on the docket that seem to be addressed to Judge Abrams's July 1 Order. None of the Complaints expressly seeks mandamus; rather, they seek various combinations of injunctive relief, declaratory relief, and compensatory and punitive damages.

The Complaints contain no factual allegations other than the ones described below.

> i.    *ECF 17 "Complaint for declaratory and injunctive relief"*
>       *against New York State Department of Transportation*
>       *(NYSDOT) (the "ECF 17 Complaint")*

This complaint makes conclusory allegations that New York State Department of Transportation "and its officers" "repeatedly targeted him," "unlawfully seiz[ed] his truck," issued "multiple duplicate traffic tickets," and did so "based on racial profiling and immigration

---

[5] All of these filings use the same formatting, structure, and contain numerous links to "cocounsel.thomsonreuters.com/file/view…" that are not accessible to view. ECF Nos. 22, 23, 24, 25, 26 each also attach docket summaries that bear a Westlaw footer and list docket entries 1 through 15. None of these documents is signed.

status." (ECF 17 at 1). This conduct, the complaint concludes, violated Plaintiff's rights under Eighth and Fourteenth Amendments. (ECF 17 at 3).

This complaint no longer seeks mandamus; instead, it only seeks a declaration that the New York State Department of Transportation violated Plaintiff's rights and seeks an injunction "prohibiting the NYSDOT from engaging in further discriminatory practices against [Plaintiff]". (ECF 17 at 3).[6]

> ii. *ECF 22 "Complaint for declaratory and injunctive relief"*
> *against United States Department of Justice and Executive*
> *Office for Immigration Review (the "ECF 22 Complaint")*

This Complaint also only seeks declaratory and injunctive relief, for violations of Fourth, Fifth, and Eighth Amendments. Importantly, Plaintiff seeks "an injunction preventing the Defendants from deporting Plaintiff and ordering a new hearing that complies with due process requirements." (ECF 22 at 3).

In this Complaint, Plaintiff claims that, at an immigration hearing on April 18, 2018, his "application for adjustment of status with cancellation of deportation [was denied], and the immigration judge decided to deport the Plaintiff." (ECF at 22 at 1, 2). The ECF 22 Complaint then states, in conclusory fashion, that Plaintiff's "due process rights were violated as the proceedings were conducted in a manner that was fundamentally unfair and prejudicial to Plaintiff's case." (*Id.* at 2.) The only facts pleaded in the ECF 22 Complaint are that Plaintiff had an immigration hearing on April 18, 2018, where he was represented by unnamed counsel, that his application for adjustment of status was denied, and (reading a pro se Plaintiff's complaint with special solicitude) that an order of deportation was issued.

---

[6] Although Plaintiff is self-represented, the ECF 17 Complaint also seeks "costs and reasonable attorney's fees" and "such other and further relief as the Court deems just and proper." *Id.* at 3.

> iii. *ECF 23, "Complaint for declaratory and injunctive relief" against State of New Jersey, New Jersey Commission of Motor Vehicles (the "ECF 23 Complaint")*

This Complaint seeks damages from the State of New Jersey and the New Jersey Commission of Motor Vehicles for their failure "to provide necessary assistance in the process to bar the New York State DMV from restoring his [commercial drivers' license], despite being aware of the ongoing legal issues." (ECF 23 at 2). The Complaint also seems to assert that the New Jersey Commission of Motor Vehicles acted negligently "by failing to take appropriate actions to prevent the New York State DMV from restoring Plaintiff's CDL." (ECF 23 at 3).

In short, Plaintiff held or holds a New York CDL, and seeks to hold New Jersey and its Commission of Motor Vehicles liable for <u>not</u> preventing New York State from <u>restoring</u> his New York CDL.

> iv. *ECF 24, "Complaint for declaratory and injunctive relief" against Saddle River Municipal Court[7] (the "ECF 24 Complaint")*

This Complaint seeks a declaration that defendant violated Plaintiff's constitutional rights under the Fourth, Sixth, Eighth and Fourteenth Amendments, and compensatory and punitive damages. (ECF 24 at 3). Although styled as seeking injunctive relief in the title, the body of the ECF 24 Complaint does not mention injunctive relief.

This complaint alleges that "on or about 2023, Plaintiff was involved in legal proceedings before the Sadele [sic] River Municipal Court." (ECF 24 at 2). Plaintiff further claims that the court exhibited corruption and bias "that favored the prosecution," and that "Defendant [Defense Attorney's Name] [sic] coerced the Plaintiff into pleading guilty without adequately

---

[7] The body of the ECF 24 Complaint names as its sole defendant the "Sadele River Municipal Court."

advising Plaintiff of the consequences of such a plea…" (ECF 24 at 2). This guilty plea then "caused the Plaintiff significant emotional distress, financial loss, and damage to their professional standing. [sic]" *(Id.).*

> v. *ECF 25 "Complaint" against New York State Department of Motor Vehicles ("DMV") and New York State Driver Improvement Program (the "ECF 25 Complaint")*

This Complaint, although styled only as a "Complaint," <u>does</u> seek declaratory and injunctive relief as well as compensatory and punitive damages. (ECF 25 at 3). In this complaint, Plaintiff asserts that he applied for a restoration of his license in 2018,[8] which the DMV "initially approved," but which approval was then withdrawn by the DMV in 2021. (ECF 25 at 2). Plaintiff asserts that the withdrawal of the "license restoration" was in violation of the Fourteenth, Fourth and Eighth Amendments because Plaintiff was not provided reasons or an opportunity to be heard in connection with the 2021 withdrawal of license restoration, and because "from 2018 to 2025, Plaintiff has suffered continuous and significant business losses due to the legal inability to operate a vehicle, which is essential for Plaintiff's business operations." (ECF 25 at 2).

> vi. *ECF 26 "Complaint" against "Criminal Court of the City of New York" (the "ECF 26 Complaint")*

This Complaint "seek[s] redress" for Eighth and Fourteenth Amendment violations "arising from bias and illegal arrest related to a DWI charge, and ineffective assistance by the defense attorney." (ECF 26 at 1). Plaintiff asserts that his arrest was "conducted without probable cause," because Plaintiff was "not exhibiting any signs of intoxication. . . [nor was he] operating a motor vehicle at the time of his arrest." (*Id.* at 2.) Plaintiff then asserts that he was "coerced" to plead guilty, and that "the Criminal Court of the City of New York exhibited bias

---

[8] The complaint never mentions whether this was Plaintiff's CDL or another form of license.

against the Plaintiff, as evidenced by specific examples of bias," none of which are identified in the ECF 26 Complaint. (*Id.* at 2). This action seeks, *inter alia*, "compensatory and punitive damages," and a declaration that the defendant violated Plaintiff's Constitutional rights. (*Id.* at 3).

II.    **DISCUSSION**

A.  **Standard Of Review and Applicable Law**

Under 28 U.S.C. § 1915(e)(2), a court must dismiss a prisoner's *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("District courts may dismiss a frivolous complaint *sua sponte*, even when the plaintiff has paid the required filing fee."); *Fitzgerald v First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (courts have power to dismiss a claim under their inherent authority, and district court acted properly in exercising such authority in a fee-paid case). "[A] complaint...is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

To avoid dismissal, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). More specifically, the plaintiff must allege enough facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a claim to sufficiently "raise a right to relief above the speculative level," it must be grounded on factual allegations. *Twombly,* 550 U.S. at 555. A claim grounded on mere suspicion is not enough to meet this

standard. *Id*. "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555, 557) (internal citation omitted, alteration in original).

Notwithstanding the Court's power to dismiss cases *sua sponte*, however, the Court is also obliged to construe *pro se* pleadings liberally, and to interpret them to raise the strongest claims that they suggest. *See Morales v. Loc. 32BJ*, No. 22-CV-8700 (OTW), 2024 WL 1255488, at *3 (S.D.N.Y. Mar. 25, 2024), *aff'd sub nom. Morales v. Loc. 32BJ SEIU*, No. 24-860, 2025 WL 547278 (2d Cir. Feb. 19, 2025). However, "[e]ven in a *pro se* case ... 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009)).

### i.      *Dismissal under Rule 8 of the Federal Rules of Civil Procedure*

Fed. R. Civ. P. 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Iqbal*, 556 U.S. at 678-79. But it does not have to accept as true "threadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Buon*, 65 F.4th at 76. After separating legal conclusions from well-pleaded factual allegations, the Court must

10

determine whether those facts make it plausible -- not merely possible -- that the pleader is entitled to relief. *Twombly*, 550 U.S. at 570; *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).

The complaints at ECF Nos. 17 and 22 through 26 should be dismissed for failure to state a claim upon which relief can be granted. Each complaint fails to plead sufficient factual matter to support a plausible inference that Plaintiff asserts a cognizable federal claim or that any constitutional right has been violated. Although Plaintiff does not identify any specific federal statute as the basis for his claims, the pleadings—other than the complaint at ECF No. 22— appear to invoke 42 U.S.C. § 1983.

  ii.  <u>42 U.S.C. § 1983 ("Section 1983")</u>

Section 1983 provides a vehicle for a plaintiff bringing claims that his federally protected rights were violated by persons acting under color of state law. 42 U.S.C. § 1983; *see also Frenkel v. New York City Off-Track Betting Corp.*, 701 F. Supp. 2d 544 (S.D.N.Y. 2010). But Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 159 (2d Cir. 2005). Thus, the factors necessary to plead and ultimately establish a Section 1983 violation "will vary with the constitutional provision at issue because the elements of different constitutional violations vary." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and alterations omitted).

To state a Section 1983 claim, a plaintiff must plead (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting

under the color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-57 (1978).

To establish personal liability under Section 1983, a plaintiff must show that the defendant was "personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" *Harris v. Westchester Cty. Dep't of Corr.,* No. 06-CV-2011 (RJS), 2008 WL 953616, at *9 (S.D.N.Y. Apr. 3, 2008) (quoting *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir. 2001)); *accord Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citation omitted)).

Personal involvement in a Section 1983 violation may be shown by evidence that the defendant: (1) directly participated in the alleged violation; (2) failed to remedy the violation after learning about it; (3) created a policy or custom under which the violation occurred; (4) was grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) exhibited deliberate indifference by failing to act on information indicating that the violation was occurring. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *Washington v. Kelly,* No. 03-CV-4638 (SAS), 2004 WL 830084, at *3 (S.D.N.Y. Apr. 13, 2004).

A Section 1983 claim against a <u>municipality</u> is governed by *Monell* and its progeny. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). "*Monell* expressly prohibits *respondeat superior*[9] liability for municipalities ... meaning that a plaintiff must

---

[9] *Respondeat superior* is a legal doctrine that holds an employer or principal legally responsible for the wrongful acts of an employee or agent, if such acts occur within the scope of the employment or agency. Typically, when *respondeat superior* is invoked, a plaintiff will look to hold both the employer and the employee liable. As such, a

demonstrate that 'through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'" *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97-98 (2d Cir. 2020) (quoting *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). In other words, "[w]hen a plaintiff sues a municipality under Section 1983, it is not enough . . . to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights." *Hussey v. New York Police Departments & Precincts in Manhattan*, 23-CV-2906 (LTS), 2023 WL 4106378 at *3 (S.D.N.Y. Jun. 20, 2023). "The elements of a Monell claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Id*. at 97; *see Frost v. New York City Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020).

### iii.    *Eleventh Amendment Sovereign Immunity*

"Stated as simply as possible, the Eleventh Amendment means that, as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has "abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under section 5 of the Fourteenth Amendment." *Boda v. Commissioner of New York Motor Vehicles*, No. 12-CV-4089 (BMC), 2102 WL 3704713 at *1 (E.D.N.Y. Aug. 27, 2012) (quoting *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir. 2009); holding that Commissioner of New York DMV – as extension of DMV itself – is entitled to sovereign immunity in case charging that the Department of Motor Vehicles impounded plaintiff's car and lost his personal belongings); *see also Bennett v. Brooklyn Criminal Court*, No.

---

court will generally look to the doctrine of joint and several liability when assigning damages. *Respondeat superior*, Wex: Legal Encyclopedia, Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/wex/respondeat_superior (last visited Feb. 4, 2026).

16-CV-5111 (CBA) (LB), 2016 WL 7494862 at *3 (E.D.N.Y Dec. 28, 2016) (suit against Brooklyn Criminal Court could not be maintained under Section 1983; plaintiff sought redress for arrest for reckless driving and detention on an arrest warrant for another person).

Although the Eleventh Amendment, by its terms, does not bar federal courts from hearing suits brought against a State by its own citizens, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993). This bar exists whether the relief sought is legal or equitable. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).

### B.  Application of Law to the Amended Complaints

The Amended Complaints name only governmental organizations and agencies, not individuals. They do not identify any acts taken by individuals, nor do they identify any policies or customs that subjected Plaintiff to the deprivation of a constitutional right. Common to all complaints, Plaintiff alleges he has suffered an adverse outcome from proceedings before local and federal agencies and courts, which he concludes must have involved violations of his constitutional rights. But, as discussed below, he pleads no facts that explain how each loss or bad outcome means that Plaintiff's constitutional rights have been violated, nor does he allege any *ongoing* violation of federal law. By skipping a description of facts and jumping to a legal conclusion, the Amended Complaints have not satisfied Fed. R. Civ. P. 8(a)(2), which requires pleading facts that, if true, would entitle the pleader to relief. *See, e.g. Islam v. United States Postal Service*, 24-CV-10064 (DH), 2025 WL 1237612 at *2 (dismissing individual defendants

14

because plaintiff "alleged no facts describing what these defendants did that violated his rights").

Additionally, the Defendants in ECF 17, 23, 24, 25, and 26 are all subject to Eleventh Amendment sovereign immunity, which, because Plaintiff has pled no exception,[10] is another reason for dismissal.

To obtain a temporary restraining order and preliminary injunction, a party "must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favor the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018); see also *Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992) (observing that the standards governing a temporary restraining order are the same as those governing a preliminary injunction).

The ECF 17 Complaint states that Plaintiff was issued multiple tickets and that his truck was seized, but pleads no facts to tie those acts to racial or discriminatory animus. Moreover, Plaintiff seeks an injunction, but has not alleged facts – as opposed to conclusions – that he is

---

[10] As relevant here, "[t]here is a well-known exception to this rule—established by the Supreme Court in *Ex parte Young* and its progeny—by which suits for prospective relief against an individual acting in his official capacity may be brought to end an ongoing violation of a federal law. In determining whether a litigant's claim falls under the *Ex parte Young* exception, we ask two questions: whether the complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective *T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 91 (2d Cir. 2024) (quoting *Ex parte Young*, 209 U.S. 123 (1908).Plainly stated, there is an exception to sovereign immunity which permits a lawsuit against an unconsenting state if the plaintiff seeks a court order in order to stop an *ongoing* violation of federal law. Declaratory relief and money damages, as well as any injunction which looks to a violation in the past are not an exception. *See id* (holding injunctive relief that does not allege an *ongoing* violation of federal law is not an exception to sovereign immunity).

suffering or will suffer irreparable harm in the absence of an injunction, or that he is likely to succeed on the merits.

The ECF 22 Complaint relates to immigration proceedings in 2018 in which an order of deportation was issued. But the ECF 22 Complaint does not state what actions Plaintiff or his counsel have taken in the seven years since, nor does the ECF 22 Complaint plead any facts from which one could infer that the 2018 immigration proceedings were conducted in an unconstitutional manner. Plaintiff also does not explain what these particular defendants -- the Department of Justice and the Executive Office for Immigration Review – did to harm Plaintiff's rights.

The ECF 23 and ECF 24 Complaints seek relief from New Jersey entities for failing to intervene or assist, or otherwise "causing" Plaintiff's New York CDL to be revoked, and they challenge legal proceedings in New Jersey. Other than this conclusory legal allegation, there are no facts pleaded about the New Jersey-based entities that would lead to a plausible inference that they could be liable for the revocation of Plaintiff's New York CDL. Moreover, because any acts or omissions by a New Jersey entity would have occurred in New Jersey, this court would not have personal jurisdiction over these parties, nor would venue be proper in this district. S*ee Stich v Rehnquist*, 982 F.2d 88, 89 (2d Cir. 1992) (upholding district court's *sua sponte* dismissal of S.D.N.Y. case brought against defendants in District of Columbia, and where "all discernible factual allegations . . . involve events that occurred in California"); *see also Macias v. #176 Judicial Dist. Ct., et al.*, No. 23-CV-800 (KAD), 2023 WL 4684852 at *3 (D. Conn., Jul. 21, 2023) (dismissing case brought in federal court in Connecticut that concerned actions taken by Texas officials and courts).

The ECF 25 Complaint apparently challenges a license restoration process that began in 2018, but does not plead any facts from which an inference can be drawn: that the process was conducted in an unconstitutional manner; that Plaintiff has sought any appeal or administrative remedies; or even that the claims are timely. The bare allegation of a denial of an opportunity to be heard is not sufficient here, for a process that was apparently initiated by Plaintiff.

The ECF 26 Complaint seeks to challenge the outcome of a New York Criminal Court proceeding. This action is not the proper proceeding in which to challenge the correctness of his conviction, given the complete lack of factual information concerning the proceeding itself, and whether any attempts were made to challenge the proceedings in the New York Criminal Court. In *Heck v Humphrey*, the United States Supreme Court held that plaintiffs who sought damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," must first prove that their "conviction or sentence was reversed on direct appeal, expunged by executive order, declared invalid by a[n authorized] state tribunal . . . , or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486-487 (1994).

Accordingly, I respectfully recommend that all of Plaintiff's "Amended Complaints" at ECF Nos. 17, 22, 23, 24, 25, and 26 be **DISMISSED**.

### C.  Amendment Would Be Futile in Most Instances

"Generally, leave to amend should be freely given, and a *pro se litigant* in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim. Nevertheless, leave to amend is not warranted where it would be futile. Amendment is futile when the problem with a plaintiff's cause[]of action is substantive and better pleading will not

17

cure it." *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019) (cleaned up; quoting

*Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014), *Boone v. Codispoti & Assocs.*, No. 15-CV-1391

(LGS), 2015 WL 5853843, at *5 (S.D.N.Y. Oct. 7, 2015), *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d

Cir. 2000)).

In the July 1 Order, Judge Abrams identified a particular avenue for Plaintiff to seek relief

for his immigration claim: that Plaintiff could amend his claim to "name[] only the United States

Department of Homeland Security and United States Citizenship and Immigrations Services" as

respondents. While the ECF 22 Complaint does name United States agencies, it does not name

the United States agencies that Judge Abrams directed, and which might be able to afford the

relief that Plaintiff seeks. If Plaintiff still wishes to pursue claims regarding his order of

deportation, I respectfully recommend that the dismissal of ECF 22 be granted with leave to

amend to name the proper parties and to plead <u>facts</u> – not conclusions, or emotions, or beliefs,

no matter how strongly held – that can lead to a plausible inference that Plaintiff can state a

claim. In this instance, such an amendment would provide: more information about the

immigration proceeding itself; when it occurred; what happened at the proceeding (other than

the outcome) that Plaintiff claims are a denial of due process; and what actions Plaintiff or any

lawyers took to challenge the deportation order.

Amendment of claims in ECF 23 and 24 would be futile, because these claims are against

New Jersey entities and events that happened in New Jersey. To the extent any of these

undated events are cognizable in any federal court at all, they could not be brought here.

Similarly, the claims in ECF 17, 25, and 26 relate to driving violations and suspension or

revocation of Plaintiff's license. The ECF 17 and ECF 25 Amended Complaints seek redress from

18

New York State agencies: the Department of Transportation, the Department of Motor Vehicles, and its "New York State Driver Improvement Program." The Criminal Court of New York City, the sole defendant in ECF 26, is a court in the New York State Unified Court System. These are all state agencies and under the reasoning in *Gollomp v. Spitzer*, the Eleventh Amendment bars Plaintiff's claims. 568 F.3d at 365-368.

Amendment of the ECF 26 Amended Complaint would be futile, also, because under *Heck v. Humphrey*, Plaintiff cannot seek monetary relief in federal court for a wrongful criminal conviction or sentence unless and until he can show that the conviction or sentence was indeed wrongful, and this Plaintiff has not done.

Thus, only the Amended Complaint at ECF 22 might survive a futility argument, if amended. However, I am also mindful that ECF 22 was filed in response to Judge Abrams's July 1 Order, which already explained to Plaintiff what the Amended Complaint must contain in order to survive dismissal. Rather than filing the single amended complaint as directed by Judge Abrams, Plaintiff filed six separate amended complaints, none of which complied with Judge Abrams's July 1 Order. Under Rule 41(b), failure to comply with the Federal Rules of Civil Procedure or a prior court order could lead to an involuntary dismissal. Thus, if Plaintiff is permitted by Judge Abrams to amend, he should be directed to file one, Amended Complaint that complies with the July 1 Order and this Report and Recommendation, if Judge Abrams adopts it.

## III.    CONCLUSION

Accordingly, I respectfully recommend that Defendant's motion to dismiss be **GRANTED** and that all of Plaintiff's Amended Complaints, filed at ECF Nos. 17, 22, 23, 24, 25, and 26 be

19

**DISMISSED**. I further recommend that the dismissals of all of the Amended Complaints <u>except for the one at ECF 22</u> be with prejudice because further amendment of the claims in the Amended Complaints at ECF Nos. 17, 23, 24, 25, and 26 would be futile.

## IV.    OBJECTIONS

In accordance with 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6. A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable Ronnie Abrams, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Abrams.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983).

The Clerk of Court is respectfully directed to serve a copy of this Report & Recommendation on *pro se* Plaintiff at his last known address.

**Respectfully submitted**,

/s/  Ona T. Wang

Dated: February 11, 2026          **Ona T. Wang**
New York, New York               United States Magistrate Judge